## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JOSEPH VERRIER,

     Plaintiff,

v.                               Case No.  4:21-cv-500-MW/MJF

MICHELLE RENO, *et al.*,

     Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Joseph Verrier is a convicted sex offender who moved from Wisconsin to Florida pursuant to the Interstate Compact for the Supervision of Adult Offenders. The Florida Department of Corrections imposed conditions of supervision on Verrier. Verrier asserts that these conditions and the way they were imposed violate several constitutional provisions. Defendants—the FDC and FDC employees—move to dismiss Verrier's claims against them because Verrier fails to allege a plausible claim upon which relief can be granted. Doc. 58. Verrier responded in opposition. Doc. 64. For the reasons set forth below, the District Court should grant in part and deny in part Defendants' motion to dismiss.

# I. BACKGROUND

On October 14, 2022, Verrier, proceeding *pro se* and *in forma pauperis*, filed a fifth amended complaint pursuant to 42 U.S.C. § 1983. Doc. 27. Verrier is suing the FDC and seven FDC employees:

1. Michelle Reno, a "supervisor";

2. Melanie Weaver, an "agent";

3. Bradley Rouskey, a "supervisor";

4. Megan Amadori, a "supervisor";

5. John Thompson, a "regional director";

6. Justine Patterson, a "regional director"[1]; and

7. Joseph Winkler, the "Assist[ant] Secretary [of] Community Corrections."

*Id.* at 4–5. Verrier is suing the individual defendants in their individual and official capacities. *Id.* at 1–2.

In 2010, Verrier pleaded guilty in Wisconsin to two counts of enticing a child to engage in prostitution in violation of section 948.07(2)

---

[1] Verrier refers to this defendant as "Justin Patterson." *E.g.*, Doc. 27 at 5. It appears from Defendants' motion to dismiss that this defendant's Christian name is "Justine." Thus, the undersigned refers to this defendant as "Justine Patterson."

of the Wisconsin Statutes. *See* Doc. 14 at 67–69. Verrier alleges that in August 2021, he applied to transfer from Wisconsin to Florida pursuant to the Interstate Compact for the Supervision of Adult Offenders ("ICSAO"). Doc. 27 at 6 ¶ 3; *see Interstate Compact for the Supervision of Adult Offenders*, INTERSTATE COMM'N FOR ADULT OFFENDER SUPERVISION, https://interstatecompact.org/sites/default/files/pdf/legal/Compact_Preamble.pdf (last visited Aug. 9, 2023). Wisconsin and Florida have adopted the ICSAO. *See* Wis. Stat. § 304.16; Fla. Stat. § 949.07. Verrier alleges that Reno, Rouskey, and the FDC "unconstitutionally added non-standard rules" to his conditions of supervision and then denied his application to transfer. Doc. 27 at 6 ¶ 3. Verrier appealed to Christopher Lain, the "head Florida Interstate Compact authority," who subsequently authorized Verrier to transfer to Florida. *Id.*

On or around September 30, 2021, FDC agent Melanie Weaver—at Rouskey and Reno's direction—"intentionally signaled [sic] Verrier out" by imposing "nonstandard" conditions of supervision without an administrative or judicial hearing. *Id.* at 7–8 ¶¶ 5–7. Verrier alleges that he is subject to the following conditions of supervision:

- he and members of his household cannot access the internet or "possess[] a computer device" for the duration of his supervision;

- he cannot consume alcohol;

- he cannot be "present in 'bars'";

- he has a 7:00 p.m. to 7:00 a.m. curfew;

- he is subject to GPS monitoring and must pay the $100-per-month fee associated with the GPS monitoring;

- he must pay "supervision fees while in treatment"; and

- he cannot contact his minor children.[2]

*Id.* at 7–8 ¶ 5. According to Verrier, "other similarly situated in[-]state probationers" are not subject to these conditions. *Id.* at 7 ¶ 5.

Verrier alleges that Reno and Rouskey imposed the challenged conditions of supervision in retaliation for a 2017 lawsuit Verrier filed against them. *Id.* at 6, 15. Verrier also alleges that Defendants imposed these conditions "to discriminate against Verrier." Doc. 27 at 9 ¶ 8.

---

[2] It is unclear from Verrier's fifth amended complaint whether these are the only conditions that the FDC imposed on him.

Verrier asserts the following claims:

1. a Fourteenth-Amendment equal-protection claim against all defendants[3];

2. a First-Amendment "right to association" claim against Amadori, Reno, Rouskey, Thompson, Patterson, Winkler, and the FDC;

3. a First-Amendment "right to receive information" claim against Amadori, Reno, Rouskey, Thompson, Patterson, Winkler, and the FDC;

4. a First-Amendment retaliation claim against Reno and Rouskey; and

5. a Fourteenth-Amendment due-process claim against Amadori, Reno, Rouskey, Thompson, Patterson, Winkler, and the FDC.

*Id.* at 12–17. Verrier requests various forms of declaratory and injunctive relief, as well as compensatory and punitive damages.

---

[3] Verrier also mentions Christopher Lane but does not identify Lane as a defendant in this action. Doc. 27 at 12.

## II. Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the motion-to-dismiss stage, courts accept all well-pleaded factual allegations of the complaint as true and evaluate all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). Courts also "hold the allegations of a *pro se* complaint

to less stringent standards than formal pleadings drafted by lawyers."
*Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

## III. DISCUSSION

### A.  The District Court Should Dismiss Verrier's Official-Capacity Claims

As noted above, Verrier is suing Amadori, Reno, Rouskey, Thompson, Patterson, Weaver, and Winkler in their official capacities. Doc. 27 at 1–5. These defendants are FDC employees. Verrier requests damages as relief against all but Weaver. *Id.* at 14–16. Defendants move to dismiss Verrier's claims for damages to the extent Verrier is suing Defendants in their official capacities. Doc. 58 at 14–15.

Official-capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). An official-capacity claim against a governmental official, therefore, generally is "treated as a suit against the underlying governmental entity." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (citing *Graham*, 473 U.S. at 165–67). Thus, Verrier's official-capacity claims against the above defendants essentially are claims against the FDC.

1.  ***The Eleventh Amendment Bars Verrier's Claims for Damages***

The Eleventh Amendment generally bars suits for damages by an individual against a state, its agencies, and its employees, unless Congress has abrogated the state's sovereign immunity or the state has consented to suit. *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). Congress has not abrogated the states' sovereign immunity in actions under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67–68 (1989).

To the extent Verrier is requesting damages for official-capacity claims against Defendants, those claims are barred by the Eleventh Amendment. *See Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996) (noting that the FDC is "a state agency that is clearly the equivalent of the State of Florida for Eleventh Amendment purposes"). The District Court, therefore, should dismiss Verrier's official-capacity claims for damages against Amadori, Reno, Rouskey, Thompson, Patterson, Winkler, and the FDC.

####   2.   *Verrier's Claims for Injunctive Relief Are Superfluous*

Verrier is suing seven FDC employees and the FDC itself. Doc. 27 at 1–5. "Typically, where the state is a defendant, naming an officer of the state in her official capacity is redundant, and 'official capacity' claims against that officer are dismissed." *Peltier v. Sacks*, 328 F. Supp. 3d 1170, 1183 (W.D. Wash. 2018) (citation omitted); *Geraghty v. E. Bradford Twp.*, 584 F. Supp. 3d 10, 18 (E.D. Pa. 2022) (same). Because Verrier is suing the FDC, his official-capacity claims against the FDC-employee defendants are redundant and should be dismissed for this reason.

The District Court, therefore, should dismiss Verrier's official-capacity claims against Amadori, Reno, Rouskey, Thompson, Patterson, Weaver, and Winkler.

### B.   <u>Verrier Fails to Allege Plausible Individual-Capacity Claims Against Amadori, Thompson, Patterson, and Winkler</u>

Verrier asserts four claims against Amadori, Thompson, Patterson, and Winkler: an equal-protection claim, a "right to association" claim, a "right to receive information" claim, and a due-process claim. Doc. 27 at 12–17. Defendants move to dismiss the claims against Amadori,

Thompson, Patterson, and Winkler because Verrier fails to plausibly allege that they are subject to supervisor liability. Doc. 58 at 15–18.

Supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Instead, plaintiffs may assert section 1983 claims against supervisory officials only "when the supervisor personally participates in the alleged unconstitutional conduction or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (citing *Cottone*, 326 F.3d at 1360).

There are several ways in which a plaintiff can establish the requisite causal connection. *Id.* A plaintiff can demonstrate "a history of widespread abuse" that puts the supervisor "on notice of the need to correct the alleged deprivation" and the supervisor fails to do so. *Id.* (quoting *Cottone*, 326 F.3d at 1360). A plaintiff also can demonstrate that "a supervisor's custom or policy . . . result[ed] in deliberate indifference to constitutional rights," or the facts alleged "support an inference that the supervisor directed the subordinates to act unlawfully or knew that

the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Cottone*, 326 F.3d at 1360 (cleaned up)). Even still, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Braddy v. Fla. Dep't of Labor & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

The only factual allegations Verrier offers against Amadori, Thompson, Patterson, and Winkler are as follows:

> On/about 11/9/21 Verrier requested from Amadori contact per court order with his minor children and ability to use computer for work and school. . . . ON about 10/21/21 Verrier contacted the regional Director John Thompson regarding the complaints outlined in this complaint. ON About 10/21/21 Verrier contacted Justin Patterson regarding the complaints in this complaint. On About 11/15/21 Verrier contacted Joe Winkler regarding the complaints outline in this complaint. Verriers made each defendant aware in 2021 in written correspondence that he was being treated in an unlawful manner and inconsistent with Florida and Federal law and being discriminated against unlawfully. Each defendant choose to impose the unconstitutional rules upon Verrier with the intent of singling Verrier out from other similarly situated in State probationers and to discriminate against Verrier.

Doc. 27 at 8–9 ¶ 8 (errors in original).

These allegations fail to plausibly suggest that Amadori, Thompson, Patterson, and Winkler personally participated in any

constitutional deprivation. Indeed, Verrier alleges that Weaver—at Reno and Rouskey's direction—imposed the challenged conditions. *Id.* at 8 ¶ 6. Verrier does not allege that Amadori, Thompson, Patterson, and Winkler were personally involved in imposing the challenged conditions.

Verrier also fails to plausibly allege a causal connection between Amadori, Thompson, Patterson, and Winkler and the challenged conditions. Verrier merely alleges that he contacted these defendants via "written correspondence" and that they "choose [sic] to impose" conditions upon Verrier. A plaintiff must allege "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677).

Furthermore, Verrier's allegations do not suggest "a history of widespread abuse" such that Amadori, Thompson, Patterson, and Winkler would be on notice of the need to correct an alleged deprivation. *Christmas*, 51 F.4th at 1355 (quoting *Cottone*, 326 F.3d at 1360). Finally, his allegations fail to plausibly allege that these defendants had a "custom or policy" that was deliberately indifferent to Verrier's constitutional rights or that Weaver, Reno, and Rouskey acted under

Amadori, Thompson, Patterson, and/or Winkler's direction. *Id.* (quoting *Cottone*, 326 F.3d at 1360 (cleaned up)).

In short, despite having five opportunities to amend his complaint, Verrier fails to plausibly suggest under the "extremely rigorous" standard for supervisory liability that Amadori, Thompson, Patterson, and Winkler violated the Constitution. *See* Docs. 12, 15, 17, 21, 27. Thus, the District Court should grant Defendants' motion to dismiss and dismiss the following individual-capacity claims against Defendants Amadori, Thompson, Patterson, and Winkler: (1) the Fourteenth-Amendment equal-protection claim, (2) the First-Amendment "right to association" claim, (3) the First-Amendment "right to receive information" claim, and (4) the Fourteenth-Amendment due-process claim.

## C.    Verrier Alleges a Plausible Equal-Protection Claim

Verrier asserts that Reno, Rouskey, Weaver, and the FDC's decision to "impos[e] non-standard rules" of supervision violates the Fourteenth Amendment's Equal Protection Clause.[4] Doc. 27 at 12–14.

---

[4] Verrier also asserts this claim against Amadori, Thompson, Patterson, and Winkler. Doc. 27 at 12. But as discussed above, the undersigned

Under the Equal Protection Clause, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.* ("*Chabad*"), 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006). "An equal protection claim may challenge . . . the conduct of individual state actors." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021).

Because Verrier is asserting an equal-protection claim "without regard to [a] suspect class," the undersigned construes Verrier's claim as a so-called "class of one" claim in which "a plaintiff alleges not that [he] belongs to a protected class, but that [he] is the only entity being treated differently from all other similarly situated entities." *Chabad*, 48 F.4th at 1233 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per

---

recommends that the District Court dismiss Verrier's individual- and official-capacity claims against these defendants. Thus, the undersigned does not include these defendants in analyzing Verrier's equal-protection claim.

curiam)). To prevail on such a claim, Verrier ultimately must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (quoting *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021)); *Grider v. City of Auburn*, 618 F.3d 1240, 1263–64 (11th Cir. 2010).

"To be 'similarly situated,' the comparators must be '*prima facie identical in all relevant respects*.'" *Grider*, 618 F.3d at 1264 (quotation and internal quotation marks omitted). That is, "[a] plaintiff must ultimately show that it and any comparators are similarly situated in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker." *Chabad*, 48 F.4th at 1233 (internal quotation marks omitted) (quoting *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008)). Courts "apply the similarly situated requirement 'with rigor.'" *Id.* (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007)).

"The rational-basis requirement sets the legal bar low and simply requires 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *D.B. ex rel. Kurtis B. v. Kopp*,

725 F.3d 681, 686 (7th Cir. 2013) (quoting *Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009)). The challenged decision must be upheld "if there is *any* reasonably conceivable state of facts that could provide a rational basis for the" decision. *Bradshaw v. Fed. Aviation Admin.*, 8 F.4th 1215, 1227 (11th Cir. 2021) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Furthermore, the "burden is on the challenger 'to eliminate any reasonably conceivable state of facts.'" *D.B. ex rel. Kurtis B.*, 725 F.3d at 686 (quoting *Srail*, 588 F.3d at 946–47).

Defendants move to dismiss Verrier's class-of-one claim because Verrier fails to plausibly allege that Defendants intentionally are treating him differently from other similarly situated probationers and that there is no rational basis for any difference in treatment. Doc. 58 at 7–10. Specifically, Defendants contend that Verrier is subject to certain conditions because he is a convicted sex offender; is subject to conditions from both Wisconsin and Florida; and is subject to both parole and probation. *Id.* at 9–10.

In his fifth amended complaint, Verrier alleges that Defendants imposed the conditions of supervision "with the intent of singling Verrier out from other similarly situated in State probations and to discriminate

against Verrier." Doc. 27 at 9 ¶ 8 (errors in original). According to Verrier, "Tim" and three "John Does," all "similarly situated in[-]state parolee[s],"[5] are permitted to use the internet, are not subject to GPS monitoring, have a 10 p.m. to 6 a.m. curfew, are allowed to consume alcohol, are allowed to be in "bars," and/or do not have to pay their supervision fees while they are in treatment. *Id.* at 9–10 ¶¶ 9–10. Verrier alleges that Tim's and the John Does' respective offense dates and convictions are similar to Verrier's offense date and conviction. *Id.* Under these allegations, Verrier plausibly alleges that there are similarly situated individuals that are subject to different conditions.

Verrier also plausibly alleges that there is no rational basis for the different conditions. Verrier notes that many of the special conditions imposed by Defendants are not required under his Wisconsin-imposed conditions. *See id.* at 7, 9. Additionally, although Defendants assert that Verrier's special conditions are due in part to Verrier's status as a probationer and parolee, Verrier alleges that he is not on parole. *Id.* at 6; *see* Doc. 64 at 1 ("Verrier is not on parole.").

---

[5] Verrier uses the terms "parolee" and "probationer" interchangeably. *Compare* Doc. 27 at 9 ¶ 9, *with id.* at 10 ¶ 10.

In short, Verrier plausibly alleges a class-of-one claim against Defendants Reno, Rouskey, Weaver, and the FDC. The District Court, therefore, should deny Defendants' motion to dismiss as to these defendants.

## D.   Verrier's First-Amendment Claims

Verrier asserts a "right to association" claim and a "right to receive information" claim under the First Amendment against Reno, Rouskey, and the FDC.[6] Doc. 27 at 14–15. Verrier also asserts a First-Amendment retaliation claim against Reno and Rouskey. *Id.* at 15–16.

### 1.   *Verrier Alleges a Plausible "Right to Association" Claim*

The First Amendment protects an individual's "right to associate with others." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. __, 141 S. Ct. 2373, 2382 (2021) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). The freedom to associate includes "expressive association" and "intimate association." *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th

---

[6] Verrier also assert First-Amendment claims against Amadori, Thompson, Patterson, and Winkler. Doc. 27 at 14. Above, the undersigned recommended that the District Court dismiss Verrier's official- and individual-capacity claims against Amadori, Thompson, Patterson, and Winkler. Thus, the undersigned does not mention these defendants in analyzing Verrier's First-Amendment claims.

Cir. 2017) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994)). Because Verrier is challenging the condition of release that he have no contact with his minor children, Verrier appears to be asserting an intimate-association claim under the First Amendment.

The right to intimate association encompasses an individual's "'freedom to choose to enter into and maintain certain intimate human relationships,' and it is protected from undue government intrusion 'as a fundamental aspect of personal liberty.'" *Id.* (quoting *McCabe*, 12 F.3d at 1563). "Intimate associations generally refer to the kinds of relationships that 'attend the creation and sustenance of a family,' such as marital or parental relationships." *Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018) (quoting *Roberts*, 468 U.S. at 619).

Because the right to intimate association is a constitutionally-protected right, Defendants' restriction of that right must be analyzed under the appropriate constitutional framework. Defendants do not indicate whether their restriction should be subject to strict scrutiny or rational-basis review. Several courts have looked to the Supreme Court's decision in *Zablocki v. Redhail*, 434 U.S. 374 (1978), for the premise that state action that "directly and substantially" interferes with intimate

association is subject to strict scrutiny; otherwise, the state action is subject to rational-basis review. *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y.*, 502 F.3d 136, 143 (2d Cir. 2007); *Montgomery v. Stefaniak*, 410 F.3d 933, 937–38 (7th Cir. 2005); *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004). Because Verrier alleges that he is precluded from all contact with his minor children, the undersigned construes the condition as directly and substantially interfering with Verrier's right to intimate association and therefore subject to strict scrutiny. *See Henry v. Abernathy*, No. 2:21-cv-797-RAH, 2022 WL 17816945, at *8–9 (M.D. Ala. Dec. 19, 2022) (applying strict scrutiny to a similar claim).

To survive strict scrutiny, the challenged state action must be "narrowly tailored to serve compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Doe v. Moore*, 410 F.3d 1337, 1342–43 (11th Cir. 2005). That is, Defendants' decision to prohibit Verrier from contacting his minor children in any respect "must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014) (citation omitted). Defendants bear the burden of

demonstrating that the challenged state action is the least restrictive means. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017).

Defendants assert that because Verrier is a convicted sex offender, his freedom to associate with his minor children can be limited if the limitation imposed is in the children's best interest. Doc. 58 at 11.

The State of Florida undoubtedly has a compelling state interest in protecting children from sexual abuse and preventing sex offenders from reoffending. *See McClendon v. Long*, 22 F.4th 1330, 1338 (11th Cir. 2022); *Goings v. Ct. Servs. & Offender Super. Agency for D.C.*, 786 F. Supp. 2d 48, 70 (D.D.C. 2011); *see also Packingham*, 582 U.S. at 106 ("[T]he sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people.") (quotation omitted). In adjudicating a motion to dismiss for failure to state a claim upon which relief can be granted, however, the District Court cannot determine that preventing Verrier from contacting his minor children is the least restrictive means of furthering compelling interests. Verrier has sufficiently stated a claim upon which relief can be granted.

### 2.   *Verrier Alleges a Plausible "Right to Receive Information" Claim*

The "right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom. *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) (emphasis omitted). The Supreme Court has referred to this as a right to "receive information and ideas." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (plurality opinion) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). This right likely extends to a person's ability to retrieve information from the internet. *See* U*nited States v. Ellis*, 984 F.3d 1092, 1104 (4th Cir. 2021) (citation omitted); *United States v. Eaglin*, 913 F.3d 88, 91 (2d Cir. 2019) ("[T]o consign an individual to a life virtually without access to the Internet is to exile that individual from society.").

Verrier alleges that the FDC has ordered him not to access the internet and not to possess devices that can access the internet. Doc. 27 at 7, 14–15. As a result, Verrier alleges that he cannot pursue certain employment and educational opportunities, among other things. *Id.*

Because the challenged condition is content neutral—that is, the condition applies to internet access generally—intermediate scrutiny applies. *Packingham*, 582 U.S. at 105–06. The challenged condition can

stand, therefore, only if it is "narrowly tailored to serve a significant governmental interest." *Id.* (quoting *McCullen*, 573 U.S. at 486). That is, the condition "must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 106 (quoting *McCullen*, 573 U.S. at 486). At trial, Defendants would bear the burden of demonstrating that the challenged condition is narrowly tailored. *See id.* at 108.

As noted above, the State of Florida has a legitimate interest in preventing sex offenders from reoffending. *See McClendon*, 22 F.4th at 1338; *Goings*, 786 F. Supp. 2d at 70; *see also Packingham*, 582 U.S. at 106. As to whether the condition is "narrowly tailored," Defendants argue that a ban on internet access is appropriate when an offender uses the internet to access pornography. Doc. 58 at 10. That may be so, but at this stage, Verrier has alleged sufficient facts to state a claim upon which relief can be granted.

### 3. *Verrier Fails to Allege a Plausible Retaliation Claim*

Verrier next asserts a First-Amendment retaliation claim against Reno and Rouskey. Doc. 27 at 15–16. Defendants move to dismiss this claim because Verrier fails to plausibly allege that Reno or Rouskey

threatened or demonstrated animosity towards Verrier such that there is a causal connection between the conditions imposed by Reno and Rouskey and a lawsuit Verrier previously filed. Doc. 58 at 13. Defendants also contend that given the four-year gap between Verrier's initiation of the previous lawsuit and Reno and Rouskey's alleged misconduct, any causal connection is too attenuated. *Id.*

The First Amendment guarantees citizens the "right of access to the courts." *Cal. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972); *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993). The First Amendment also protects "the right to be free from retaliation by a public official for the exercise of" a First-Amendment right. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). To state a claim of retaliation under the First Amendment, a plaintiff must allege:

1. he engaged in constitutionally protected speech,

2. the defendant's retaliatory conduct adversely affected that protected speech and right to petition, and

3. a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition.

*Id.* (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023) (citation omitted).

Verrier alleges that in 2017, he sued Reno, Rouskey, and the FDC. Doc. 27 at 6, 15–16; *see Verrier v. Reno*, No. 2:17-cv-204-FtM, ECF No. 1, Complaint (M.D. Fla. Apr. 14, 2017).[7] The United States District Court for the Middle District of Florida dismissed Verrier's complaint at the screening stage under 28 U.S.C. § 1915(e)(2)(B), because Verrier failed to state a plausible claim for relief. *Verrier*, No. 2:17-cv-204-FtM, ECF No. 9 (M.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, ECF No. 11 (M.D. Fla. Nov. 22, 2017). Verrier never served Reno and Rouskey with process.

At some point after initiating the 2017 action, the FDC or Wisconsin officials—Verrier doesn't specify which—transferred Verrier back to Wisconsin because he violated a condition of supervision in Florida.

---

[7] The undersigned takes judicial notice of the documents filed in Verrier's 2017 lawsuit.

Doc. 27 at 6 ¶ 1; Doc. 58 at 3. In August 2021, when Verrier applied to transfer his supervision back to Florida, Reno and Rouskey denied his request and "indicat[ed]" that the conditions of supervision imposed "would disable [Verrier's] ability to seek work and attend school while in Florida." Doc. 27 at 6 ¶ 3. Lain subsequently approved Verrier's transfer to Florida. *Id.* Upon Verrier's transfer in September 2021, Reno and Rouskey allegedly directed Weaver to impose the conditions of supervision noted above. *Id.* at 7–8 ¶¶ 5–6.

At the motion-to-dismiss stage, it is insufficient to allege only that the defendants "acted with a retaliatory motive" and that the motive was the cause of the plaintiff's harm. *Turner*, 65 F.4th at 579 (quoting *Nieves v. Bartlett*, 587 U.S. ___, 139 S. Ct. 1715, 1722 (2019)). Verrier fails to plausibly allege that there is a causal connection between his 2017 lawsuit against Reno, Rouskey, and the FDC, and the imposition of the challenged conditions of supervision. That is, Verrier's fifth amended complaint fails to plausibly allege facts which indicate that Verrier's 2017 lawsuit was a substantial or motivating factor for Reno and Rouskey to direct Weaver to impose the conditions of supervision. Verrier does not allege, for example, that Reno and Rouskey ever demonstrated animus

towards Verrier. Verrier instead includes conclusory allegations that Reno and Rouskey "intentionally signaled [sic] Verrier out" and "were intentionally attempting to retaliate against Verrier for his prior constitutional activity." Doc. 27 at 7 ¶ 5; *id.* at 15.

Furthermore, given that Verrier never served Reno and Rouskey with process in the lawsuit against them, it is unknown whether Reno and Rouskey even knew of Verrier's 2017 lawsuit when they allegedly directed Weaver to impose the challenged conditions. Thus, Verrier has failed to allege facts which indicate that Reno and Rouskey knew of Verrier's 2017 lawsuit. That omission is fatal to this claim. *See Shaw v. Foreman*, 58 F.4th 121, 130–31 (4th Cir. 2023) (noting that the defendant must be aware of the plaintiff's protected activity).

*    *    *

For the reasons set forth above, the District Court should deny Defendants' motion to dismiss Verrier's First-Amendment "right to association" claim and "right to receive information" claim against Defendants Reno, Rouskey, and the FDC. The District Court, however, should grant Defendants' motion to dismiss as to Verrier's First-Amendment retaliation claim against Reno and Rouskey.

## E.    Verrier Plausibly Alleges a Due-Process Claim

Verrier next asserts a due-process claim against Reno, Rouskey, and the FDC.[8] Doc. 27 at 16–17.

The Fourteenth Amendment's Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *Dorman v. Aronofsky*, 36 F.4th 1306, 1315 (11th Cir. 2022). This protection applies to state actions imposing conditions of supervision on out-of-state probationers. *See Clancy v. Fla. Dep't of Corr.*, 782 F. App'x 779, 781–82 (11th Cir. 2019) (discussing an out-of-state probationers due-process claim). Probationers, however, "do not enjoy 'the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation restrictions.'" *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

---

[8] Verrier does not assert this claim against Weaver, but he does assert this claim against Amadori, Thompson, Patterson, and Winkler. Doc. 27 at 16. As discussed above, the undersigned recommends that the District Court dismiss Verrier's official- and individual-capacity claims against these defendants. Thus, the undersigned does not include these defendants in analyzing Verrier's due-process claim.

To prevail on a Fourteenth-Amendment due-process claim, a plaintiff ultimately must prove "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Verrier alleges that Defendants—FDC employees—have imposed conditions of supervision that, among other things, prohibit Verrier from accessing the internet and contacting his minor children. Thus, Verrier plausibly alleges that he has been deprived of a constitutionally-protected liberty interest as a result of state action. *See Catron*, 658 F.3d at 1266. The plausibility of Verrier's claim, therefore, hinges on whether he received constitutionally-adequate process.

Constitutionally-adequate process requires at a minimum that an individual receive "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Because due process "is a flexible concept," courts look to the "particular situation" to determine the notice and hearing that are constitutionally required.

*Zinermon v. Burch*, 494 U.S. 113, 127 (1990). In doing so, courts consider three factors:

1. the private interest that will be affected by the [state] action;

2. the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

3. the [state]'s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews*, 424 U.S. at 335).

Defendants do not address any of these factors. Instead, Defendants contend that because Verrier was sentenced in Wisconsin, a Florida court lacks the authority to modify Verrier's "probation (and parole)." Doc. 58 at 14. Defendants also contend, without citing any authority in support, that they are supervising Verrier in accordance with "Wisconsin conditions and Florida statutes and without due process violation [sic]." *Id.*

Verrier alleges, however, that Defendants have imposed conditions of supervision that are more restrictive than the conditions imposed on

him in Wisconsin and the standard conditions set forth in section 948.30 of the Florida Statutes, including prohibiting Verrier from contacting his minor children and accessing the internet. Verrier alleges that Defendants did so without any hearing. Doc. 27 at 16. Thus, Verrier plausibly alleges a due-process claim against Reno, Rouskey, and the FDC.

For the reasons set forth above, the District Court should deny Defendants' motion to dismiss Verrier's Fourteenth-Amendment due-process claim against Reno, Rouskey, and the FDC.

## F.   <u>The District Court Cannot Grant Some of the Injunctive Relief Verrier Requests</u>

Verrier requests various forms of injunctive relief. Doc. 27 at 13–17. For example, Verrier requests that the District Court order Defendants to supervise him "in a manner consistent with the supervision of other similarly situated" probationers, "including a similar curfew, the ability to consume alcohol, [and] the ability to access the internet for lawful purposes." *Id.* at 13. Defendants move to dismiss the requested injunctive relief because granting such relief would violate separation of powers principles and Florida's sovereignty. Doc. 58 at 18.

The Eleventh Amendment bars a federal court from ordering a state official to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). Accordingly, Verrier's request that the District Court "compel[]" Defendants to "supervise Verrier in accordance with the laws of" Florida must be dismissed. Doc. 27 at 17; *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 102; *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1290 (11th Cir. 2015).

Under *Ex parte Young*, however, a federal court can command a state official to "refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011); *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020); *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc). Verrier's request that the District Court order Defendants to supervise him in accordance with the Fourteenth Amendment's Equal Protection and Due Process Clauses, therefore, are permissible requests for relief which the District Court has the power to grant.

For these reasons, the District Court should grant Defendants' motion to dismiss only as to Verrier's request for an injunction requiring that Defendants supervise Verrier in accordance with Florida law.

## IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss, Doc. 58, as follows:

1. **DISMISS** with prejudice the following:

 a. Verrier's official-capacity claims against all individual defendants;

 b. Verrier's individual-capacity claims against Defendants Megan Amadori, John Thompson, Justine Patterson, and Joseph Winkler;

 c. Verrier's First-Amendment retaliation claim against Defendants Michelle Reno and Bradley Rouskey; and

 d. Verrier's request for an injunction requiring that Defendants supervise Verrier in accordance with Florida law.

2. Deny Defendants' motion in all other respects.

At Pensacola, Florida, this 9th day of August, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.