# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

JOSEPH VERRIER,

    Plaintiff,

                            Case No. 4:21-cv-500-MW/MJF

MICHELLE RENO, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a convicted sex offender, moves for a temporary injunction. Doc. 77. Plaintiff asks the District Court to revise Plaintiff's conditions of probation that were set by a Wisconsin court and the Florida Department of Corrections. *Id.* at 15. Defendants responded in opposition and supplemented their response. Docs. 95; 95-1; 98. Because Plaintiff has failed to establish the four essential elements of a preliminary injunction, the District Court should deny Plaintiff's motion.

### I. Background

In 2010, in the State of Wisconsin, Plaintiff was convicted in two separate cases of child enticement involving prostitution and sexual contact: *State of Wisconsin v. Joseph M. Verrier*, Case No. 2009CF232

(Wisc. Cir. May 25, 2010), *judgment amended* April 15, 2015; *State of Wisconsin v. Joseph M. Verrier*, Case No. 2009CF153 (Wisc. Cir. July 21, 2010), *judgment amended* July 11, 2018. Docs. 95-3; 95-6; 95-7; 95-16. Plaintiff's criminal conduct included using the internet "and emails to entice a child into sexual activity and prostitution." Doc. 95-12. Plaintiff was sentenced, incarcerated, and released on supervision. Docs. 95-5; 95-12; 95-13; 95-16; 95-21.

On three separate occasions—in February 2014, October 2016, and September 2021—Plaintiff moved to Florida and therefore transferred into Florida's adult probation and supervision program. While in Florida, Plaintiff violated his conditions of probation multiple times. Docs. 95-20 at 6-10 (Revocation Summary); 95-22 (Florida Department of Corrections Probation & Parole Services—Case Notes). For example, between 2016 and 2018, Plaintiff used the internet to:

- download hundreds of pornographic videos that depicted young-looking women, including women who looked like children. Docs. 95-22 at 43–45, 50, 77; 95-20 at 6.

- communicate with "sex workers" via a website (Backpage.com) that was known to be used by sex traffickers to sell and purchase victims of sex trafficking. Doc. 95-22 at 43; *see also* Doc. 95-20 at 6-7.

- create profiles—under false names—on dating and social media sites, which is another method that sex traffickers use to recruit

and market sex trafficking victims. Docs. 95-22 at 51, 58–59, 77, 80–81; 95-20 at 6.

Plaintiff's multiple probation violations also included:

- possession of obscene, pornographic, and sexually-explicit materials that "depict[ed] young looking females/girls engaged in obscene and pornographic sexual activities and poses." Docs. 95-20 at 6; 95-22 at 77.

- taking a "young looking female by boat to a remote beach" and taking "over 390 photos of her in sexually provocative poses including naked poses." Docs. 95-20 at 6; 95-22 at 80.

Because of these egregious violations of Plaintiff's probation, a Wisconsin court found that Plaintiff had violated the terms of his probation and sentenced Plaintiff to serve four years of imprisonment and six years of supervision. *State of Wisconsin v. Joseph M. Verrier*, Case No. 2009CF153 (Wisc. Cir. July 21, 2010), *judgment amended* July 11, 2018; *see also* Docs. 95-6 (Judgment of Conviction Sentence Withheld, Probation); 95-13 (Judgment of Conviction After Revocation of Probation). In the 2018 "Judgment of Conviction After Revocation of Probation," the Wisconsin court imposed conditions on Plaintiff that included, "No use of computer or internet access except with the consent of his agent." Doc. 95-13 at 2.

Defendants were or are officials with the Florida Department of Corrections ("FDC"). Prior to Plaintiff moving to Florida in 2021, the FDC contacted Plaintiff, Plaintiff's mother, and Plaintiff's step-father to explain the restriction on Plaintiff's use of the internet imposed by the Wisconsin court. Doc. 95-22 at 88–91. Plaintiff was aware of the terms of his prohibition and signed a form acknowledging the restrictive conditions he would endure if he elected to move to Florida. Doc. 95-5 at 2–3. In light of the restrictions to be imposed on Plaintiff, the FDC suggested that Plaintiff stay in Wisconsin until he completed his term of supervision. Doc. 95-22 at 88–96. Despite this, in September, 2021, Plaintiff elected to move to St. James City, Florida.

On December 16, 2021, Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced this civil action. Doc. 1. Plaintiff alleges that Defendants "unconstitutionally added non-standard rules" to his conditions of supervision "to discriminate against" him. Doc. 27 at 6, 9. Plaintiff alleges that these rules violate his First- and Fourteenth-Amendment rights. Doc. 27 at 12–14.

On June 3, 2024, Plaintiff filed a 16-page motion to enjoin Defendants from enforcing certain conditions of Plaintiff's Extended

Supervision. Docs. 77 at 1, 15; 95-13 at 2–3. Essentially, Plaintiff requests that the District Court order Defendants to:

- reduce Plaintiff's curfew to only 10 p.m. to 7 a.m.;
- allow Plaintiff to possess and consume alcoholic beverages;
- allow Plaintiff to access the internet; and
- allow members of Plaintiff's household to possess electronic devices that can access the internet.[1]

Doc. 77 at 15.

## II. DISCUSSION

A preliminary injunction prior to trial is an extraordinary remedy. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). Indeed, entry of a preliminary injunction should be "the exception rather than the rule[.]" *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *See Univ. of Texas v.*

---

[1] To the extent Plaintiff seeks to assert the rights of third parties, it is questionable whether he has standing to do so. Because Plaintiff utterly fails to demonstrate entitlement to a preliminary injunction, however, the District Court need not address this issue at this time.

*Camenisch*, 451 U.S. 390, 395 (1981); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

To establish entitlement to a preliminary injunction, a movant must show:

> (1) a substantial likelihood of success in the underlying claims—on the merits;
>
> (2) a substantial likelihood of suffering irreparable injury if the preliminary injunction is not granted;
>
> (3) that the threatened injury to the movant outweighs any injury the nonmovant might suffer from the injunction; and
>
> (4) the injunction would not disserve public interest.

*Winter*, 555 U.S. at 20; *Georgia v. President of the United States*, 46 F.4th 1283, 1292 (11th Cir. 2022); *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290–91 (11th Cir. 2022). A district court cannot issue a preliminary injunction unless the movant clearly carries the burden of persuasion as to each of the four prerequisites. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam). Failure to establish even one of the first two factors is fatal to a motion for a preliminary injunction. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

A.   **<u>Plaintiff's Failure to Demonstrate a Likelihood of Success</u>**

The ability to demonstrate a substantial likelihood of success on the merits is "the most important preliminary-injunction criterion." *Georgia*, 46 F.4th at 1301 (quoting *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022)).

  1.   *Plaintiff's First-Amendment Claim*

Plaintiff alleges his First-Amendment "right to receive information" is being violated by the condition of his probation that prohibits internet access.

The First-Amendment "right to receive information" is not absolute, especially for convicted sex offenders who are under government supervision to protect children from them. *See Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (probationers do not have unfettered freedom, they must follow the rules of supervision); *United States v. Cordero,* 7 F.4th 1058, 1070 (11th Cir. 2021) (a condition of supervised release is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights). Limitations on the First-Amendment rights of sex offenders exist because "[s]exual crimes against minors cause substantial and long-lasting harm." *United States v. Mozie*, 752

F.3d 1271, 1289 (11th Cir. 2014), s*uperseded by statute as stated in United States v. Glenn*, 839 F. App'x. 376, 384 (11th Cir. 2020); *see also United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) ("Child sex crimes are among the most egregious and despicable of societal and criminal offenses"). Among other harms, the sexual abuse of minors "leaves indelible memories" on a victim's mind from which a "victim will likely continue to suffer throughout her life[.]" *United States v. Taylor*, 736 F. App'x 216, 222 (11th Cir. 2018). Pedophilic sex offenders have a high rate of recidivism. *See Smith v. Doe*, 538 U.S. 84, 103 (2003).

Accordingly, society has a compelling interest in preventing sex offenders from perpetrating sex crimes against children. *Packingham v. North Carolina*, 582 U.S. 98, 106 (2017). In light of the substantial dangers posed by sex offenders—and the gravity of the irreparable harm sex offenses engender—courts have repeatedly upheld stringent supervisory conditions such as limitations on computer access. *Cordero*, 7 F.4th at 1070; *United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015); *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003).

Here, Plaintiff repeatedly used the internet to sexually abuse children, including by collecting and possessing pornographic images and

obscene materials and to contact potential victims. Producing child pornography for consumers, like Plaintiff, is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved. *United States v. MacEwan*, 445 F.3d 237, 249–50 (3d Cir. 2006). Furthermore, "victims of child pornography may suffer a new injury upon the republication of the pornographic material." *Elden v. Nirvana LLC*, 88 F.4th 1292, 1296 (9th Cir. 2023). "The online dissemination of child pornography haunts victims long after their original images or videos are created." *Id.* at 1297. "[E]very viewing of child pornography is a repetition of the victim's abuse." *Paroline v. United States*, 572 U.S. 434, 457 (2014).

In light of these dangers, their severity, and probability, Plaintiff has failed to demonstrate that a restriction on his ability to access the internet is disproportionate to the gravity of the harm he likely would cause if given access—especially insofar as lesser restrictions failed to prevent him from recidivating. Plaintiff has failed to carry his burden of demonstrating that he is likely to prevail on the merits of his First-Amendment claim.

### 2. *Plaintiff's Equal-Protection Claim*

To prevail on an equal-protection "class of one" claim, Plaintiff must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021)); *see also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010). "To be similarly situated, the comparators must be prima facie identical in all relevant respects." *Grider*, 618 F.3d at 1264 (internal quotations omitted).

Here, Plaintiff has failed to properly allege, much less adequately demonstrate, that he and any comparators are similarly situated. Plaintiff offered two individuals as comparators. Plaintiff first offers as a comparator, "Patrick Lee Sluyter." Plaintiff relates only a few facts about Sluyter:

- in a Florida court, possibly in 2001, Sluyter was convicted of two counts of sexual activity with a child, and the court sentenced him to 25 years of imprisonment and 10 years of sex offender probation. Doc. 77 at 29–30.

- on March 27, 2023, Sluyter filed a *"Pro Se Motion to*

>   *Modify/Convert Probation/Community Control*" in the Circuit Court for Lee County, Florida. Doc. 77 at 27.
>
> - in his motion, Sluyter argued that he should not be subject to the same internet restriction as "others" because his conviction was entered prior to July 1, 2005. Doc. 77 at 27–28.
>
> - the Circuit Court for Lee County scheduled a hearing on Sluyter's motion for April 10, 2023. Doc. 77 at 31.

Obviously Plaintiff has not demonstrated that Sluyter is an appropriate comparator, much less that the FDC treated Plaintiff disparately when compared to its treatment of Sluyter.

Plaintiff also offers as a comparator "Joseph Kozlowski." Plaintiff offers the following information about Kozlowski:

> - Kozlowski is a Wisconsin offender who is currently being supervised in Lee County Florida. Doc. 77 at 8.
>
> - Kozlowski is a registered sex offender and violated the terms of his supervision. Doc. 77 at 42.
>
> - Kozlowski is not a parolee, rather he is being supervised under Florida Statute 948.30. Doc. 77 at 8.

Obviously Plaintiff also has not demonstrated that Kozlowski is an appropriate comparator, much less that the FDC treated Plaintiff disparately when compared to its treatment of Kozlowski.

Plaintiff has failed to carry his burden of demonstrating that he is likely to prevail on the merits of his equal-protection claim.

### 3. *Plaintiff's Due-Process Claim*

To prevail on a Fourteenth-Amendment due-process claim, a plaintiff must establish "(1) a deprivation of a constitutionally protected liberty . . . ; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal quotations omitted). Because due process "is a flexible concept," courts look to the "particular situation" to determine the notice and hearing that are constitutionally required. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Here, Plaintiff does not discuss the three elements of a due-process claim and does not even attempt to demonstrate that he is likely to prevail on this claim. Accordingly, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of this claim.

### B.  **Plaintiff's Failure to Demonstrate Irreparable Injury**

With respect to the second element for a preliminary injunction, a movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 21–22 (citation omitted). A mere "possibility of irreparable harm" is not enough. *Id.*; *Siegel*, 234 F.3d at 1176–77; *Church*, 30 F.3d at 1337 (stating that to obtain injunctive relief,

a plaintiff must show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury" (citation omitted)).

When a plaintiff fails to demonstrate that irreparable injury is likely in the absence of an injunction, a court cannot issue a preliminary injunction. *Benisek*, 585 U.S. at 158. Along these lines, "a party requesting a preliminary injunction must generally show reasonable diligence." *Id.* at 159 (citation omitted).

Plaintiff alleges that the restrictions on his use of the internet prevent him from accessing legal documents and health information, and he is unable find a better paying job or go to school. Obviously, these are not irreparable injuries.

Additionally, Plaintiff's tardiness in seeking a preliminary injunction cuts against the possibility of finding that Plaintiff is likely to suffer an irreparable injury. Consider the timeline of the relevant events:

- in September 2021, the FDC imposes/enforces the restrictions about which that Plaintiff complains.
- on December 16, 2021, Plaintiff initiates this civil action.
- on June 3, 2024, Plaintiff files the instant motion for a preliminary injunction.

Plaintiff's substantial delay—*almost three years*—in moving for a preliminary injunction precludes the District Court from finding that Plaintiff exercised reasonable diligence to obtain an injunction. Such a lengthy delay strongly "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (plaintiffs' allegation of irreparable "injury become less credible by their having slept on their rights" (citations omitted)).

Accordingly, Plaintiff has failed to carry his burden of demonstrating that he would suffer an irreparable injury absent a preliminary injunction.

## C. Plaintiff's Failure to Establish the Third and Fourth Elements

The third and fourth elements for a preliminary injunction merge when, as here, the party opposing the preliminary injunction is the government. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (per curiam).

As noted above, Plaintiff is a convicted sex offender. Specifically, he was convicted in two separate cases involving two counts of child enticement involving prostitution and one count of child enticement with

sexual contact. Furthermore, between 2016 and 2018, while being supervised by the FDC, Plaintiff violated the terms of his supervision by pursuing relationships with online female "sex workers" and by obtaining and possessing multiple obscene, pornographic, and sexually-explicit images that "depict young looking females/girls engaged in obscene and pornographic sexual activities and poses." Docs. 95-20 at 6–10; 95-22 at 77–78. He also took a "young looking female by boat to a remote beach and took over 390 photos of her in sexually provocative poses including naked poses," and obtained and utilized social media accounts under false names. Docs. 95-20 at 6; 95-22 at 80.

As noted above, child sex crimes cause substantial harm and have a long-lasting effect on their victims and the public. *See Sarras*, 575 F.3d at 1220; *and Mozie*, 752 F.3d at 1289. "In cases involving sexual crimes against children, courts have repeatedly recognized a substantial risk that physical force will be used to ensure compliance." *Chery v. Ashcroft*, 347 F.3d 404, 409 (2d Cir. 2003). "A child has very few, if any, resources to deter the use of physical force by an adult intent on touching the child. In such circumstances, there is a significant likelihood that physical force

may be used to perpetrate the crime." *United States v. Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996).

Society has a "strong interest in preventing the sexual exploitation of children." *United States v. Stokes*, 726 F.3d 880, 893 (7th Cir. 2013); *New York v. Ferber*, 458 U.S. 747, 757, 763 (1982) (noting that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance"); *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014). The District Court also must consider that children are extremely vulnerable to sexual abuse. *Thompson v. Barr*, 922 F.3d 528, 533 (4th Cir. 2019) ("Sexual abuse of children always involves preying on the vulnerable[.]"); *United States v. Hughes*, 632 F.3d 956, 962 (6th Cir. 2011) (noting the special vulnerabilities of children). "Children in particular—because of their naiveté, their dependence on adults, and their inability to understand, flee, or resist such advances—are vulnerable to adults who seek to take advantage of them sexually." *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1013 (9th Cir. 2008) (Bybee, J., dissenting), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009).

Furthermore, "[t]he risk of recidivism posed by sex offenders is frightening and high." *Smith*, 538 U.S. at 103 (internal quotations omitted). Plaintiff's criminal history and his past failures to comply with the terms of his supervision further indicate that Plaintiff poses a substantial danger to children. Docs. 95-6; 95-7; 95-13; 95-16; 95-20; 95-22.

In light of the gravity of the harm that sexual abuse of minors can cause, the high probability of such crimes being committed by a convicted sex offender like Plaintiff, and Plaintiff's demonstrated refusal to comply with conditions designed to protect children, Plaintiff has utterly failed to establish that the equities balance in his favor and that the requested injunction would be in the public's best interest.

### III. Conclusion

Because Plaintiff failed to carry his burden to establish entitlement to a preliminary injunction, the undersigned respectfully **RECOMMENDS** that the District Court **DENY** Plaintiff's "Motion for temporary Injunctive Relief." Doc. 77.

At Pensacola, Florida, this <u>26th</u> day of July, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**